UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL KNIGHT,

        Plaintiff,

    v.

RICHARDSON BAY REGIONAL
AGENCY, et al.,

        Defendants.

Case No. 3:22-cv-06347-WHO

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER**

Re: Dkt. No. 3

Daniel Knight seeks a temporary restraining order to preserve the status quo and prevent the Richardson Bay Regional Authority ("RBRA"), the RBRA Harbormaster Jim Malcom, and the RBRA Executive Director Steven McGrath from seizing his boat, the *Coronado*, and its anchor system. The parties have two fundamental and substantial disagreements: whether Knight's boat constitutes "marine debris" under the relevant regulation, and whether Knight lives on the boat. These questions and the evidence provided raise serious questions going to the merits of Knight's substantive due process claim under the Fourteenth Amendment, his unreasonable seizure claim under the Fourth Amendment, and his Takings Clause claim under the Fifth Amendment. Additionally, the loss of the boat would be a significant hardship to Knight, particularly if his claim that he lives there is correct. For those reasons, and as explained in detail below, Knight's motion for a temporary restraining order is GRANTED.

Knight shall file an expanded Motion for a Preliminary Injunction by November 23, 2022. The defendants shall file any opposition by December 12, 2022, and Knight may file any reply by December 19, 2022. The hearing will be held on January 4, 2023, at 2:00 p.m. via Zoom videoconference. The parties shall conduct expedited discovery and exchange initial disclosures of the documents each side relies on to prove their claims and defenses, and a list of witnesses, by

1    November 3, 2022.

2         Knight's motion to proceed in forma pauperis is GRANTED.  *See* Dkt. No. 2.  The

3    complaint meets the requirements of 28 U.S.C. § 1915.  Regarding service, defendants RBRA,

4    Malcolm, and McGrath appeared in opposition to this motion and have been adequately apprised

5    of the case.  The Clerk shall issue a summons and the U.S. Marshall shall serve process on these

6    three defendants without prepayment.  *See* 28 U.S.C. § 1915.  The status of the complaint as to the

7    other named defendants is currently unclear and further service will be addressed in future filings.

8         Knight asks for the appointment of counsel.  I will not do so at this time and advise him to

9    seek assistance from the Court's "Legal Help Center" for unrepresented parties.  There is a link on

10   the court's homepage at www.cand.uscourts.gov titled "If You Don't Have a Lawyer" that

11   provides additional information.  In San Francisco, the Legal Help Center is located on the 15th

12   Floor, Room 2796, of the courthouse at 450 Golden Gate Avenue.  To make an appointment, call

13   415-782-8982.

14        Finally, both parties agree that an early mediation might be beneficial.  They are referred to

15   the court's Alternative Dispute Resolution unit for mediation, to be completed by mid-December

16   if possible.

17                                          **BACKGROUND**

18        On October 21, 2022, Knight filed a motion for a temporary restraining order, seeking to

19   restrain the defendants from seizing his boat and anchor system.  Motion for Temporary

20   Restraining Order ("Mot.") [Dkt. No. 3].  That same day, I issued an order preserving the status

21   quo until the parties could be heard, and I ordered the defendants to refrain from seizing the boat

22   and anchor system.  [Dkt. No. 7].  I permitted the defendants to file a response to the motion by

23   October 25, 2022, which they did.  *See* Opposition to Motion for Temporary Restraining Order

24   ("Oppo.") [Dkt. No. 10].  I held a hearing on October 27, 2022, at which Knight and counsel for

25   the RBRA appeared.

26        Knight asserts that he is a member of the "anchor-out"[1] community in Richardson Bay, off

27   

28   _____
     [1] Part of Knight's claim seems to arise from his assertion that the RBRA does not have authority
     to regulate the anchor-out community because of certain federal regulations.  *See* Compl. ¶ 15,

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  the coast of Marin County, California, and that he lives there on his boat, the *Coronado*.  Mot.

2  ¶¶ 1, 3, 15, 38; Mot. Ex. A Declaration of Daniel Knight ("Knight Decl.") ¶ 2.  Knight says that he

3  has lived there for twenty-five years, that the *Coronado* is sea-worthy and sails often, and that he

4  has nowhere else to live because he has a fixed income, certain physical ailments, and little credit

5  or rental history.  Mot. ¶¶ 1, 2, 3; Knight Decl. ¶¶ 2, 6-11.  He filed this action because, according

6  to Knight, the RBRA is attempting to seize and dispose of his boat without authority, in violation

7  of his constitutional rights.  Mot. ¶¶ 2, 4, 7, 8, 17-22, 31; Knight Decl. ¶ 14.

8        The RBRA is alleged to be a local government agency run and regulated under a joint

9  service agreement between the County of Marin and the cities of Mill Valley, Tiburon, and

10 Belvedere.  Mot. ¶ 16.

11       The RBRA posted a notice on the boat on October 14, 2022, notifying Knight that the

12 *Coronado* would be "removed and disposed of" by the RBRA within ten days.  Mot. Ex. B.  The

13 notice asserted that the boat was "Marine Debris" under California Harbors and Navigation Code

14 ("CHNC") sections 550 and 551, which in part defines marine debris as a vessel that is

15 "unseaworthy and not reasonably fit or capable of being made fit to be used as a means of

16 transportation by water."  *Id.*

17       Knight asserts that the boat is not marine debris because it sails and has a functional

18 engine, and he includes three declarations supporting that assertion.  *See* Knight Decl.; Mot. Ex. B

19 Declaration of Joseph Bernstein ("Bernstein Decl."); Ex. C Declaration of Aaron Kelly ("Kelly

20 Decl.").  He says that he has not sailed it recently because the RBRA seized his anchor system.

21 Knight Decl. ¶¶ 4, 15-18.  The RBRA disagrees and included a declaration from Harbormaster

22 Malcolm that says he has only seen the boat move once since January 2021.  Oppo. Declaration of

23 Jim Malcolm ("Malcolm Decl.") ¶¶ 4-5.  The RBRA points out that the boat has "an extreme

24 amount of debris on it, particularly in the cockpit."  Malcolm Decl. ¶ 3.  The photos of the vessel

25 submitted by the RBRA do not clearly depict extreme debris.  *See* Oppo. Ex. D.

26

27 _____

28 131.  While 33 C.F.R. § 110.126a defines Richardson Bay as a "Special Anchorage Area," it is
unclear from the text of the regulation how it affects the RBRA's authority over the boats in the
Richardson Bay anchor-out community.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Knight also argues that he lives on the boat and any effort to dispose of the ship will render him homeless.  Knight Decl. ¶¶ 5-11; Mot. ¶¶ 3-4.  Again, the RBRA disagrees and says that the boat has been uninhabited since at least October 2021.  Malcolm Decl. ¶ 8; *see also* Oppo. Ex. E (email exchange between Malcolm and Knight where Malcolm states, "On July 6, 2022, you admitted to me that you no longer lived on the vessel.").

Malcolm also asserts that Knight wanted to participate in the RBRA "buy-back program," which permits owners to surrender boats to the RBRA in exchange for cash.  Malcolm Decl. ¶¶ 10-12.  Malcolm included screenshots of what appear to be a text message conversation in which Knight says he wants to participate in the program.  Oppo. Ex. B.  Malcolm says that he also gave Knight the option of moving his boat out of the Bay.  Oppo. 5:1-5; Malcolm Decl. ¶ 10. It was only when Knight withdrew his participation that the RBRA moved forward with seizing the boat.  Malcolm Decl. ¶¶ 14-15.  Knight counters that he only entertained the idea of the program because he was being extorted by Malcolm and because Malcolm "fraudulently" asserted that his boat is marine debris.  *See* Mot. ¶¶ 1, 3, 8; Mot. Ex. A (Cease and Desist Letter).

Finally, Knight seems to assert in the complaint that the effort to dispose of his boat is part of an elaborate conspiracy.  According to Knight, the Bay Conservation and Development Commission ("BCDC") was chastised by the State of California for failing to address environmental issues in the San Francisco Bay, so the BCDC and RBRA (along with many other defendants) worked together to come up with a scheme to appease the State and also receive additional funding from state and federal environmental protection agencies in the process.  *Id.* ¶¶ 47-54.  Apparently the RBRA found an unlicensed surveyor to conduct fraudulent surveys and determine that certain vessels constituted marine debris so that the RBRA could remove those vessels and show the various funding agencies and the State that it was taking action against environmental polluters.  *Id.* ¶¶ 9, 40-46, 54.

The RBRA in turn says it entered into an agreement with the BCDC "to remove illegal anchor-outs in Richardson Bay" and that its effort to remove marine debris are in furtherance of environmental preservation and safety goals.  Oppo. 7:11-21.

Knight asserts nine causes of action, which construed liberally[2] present claims under 42

U.S.C. § 1983, 42 U.S.C. § 1985, and *Monell* for (1) violation of the Fourth Amendment's

prohibition on unreasonable searches and seizures (Causes of Action 1 and 2); (2) violation of the

Fourteenth Amendment's Due Process Clause for deprivation of property (Causes of Action 1 and

2); (3) violation of the Fourteenth Amendment's Due Process Clause under the state-created

danger doctrine (Causes of Action 1 and 2); (4) violation of the Fifth Amendment's Takings

Clause (Causes of Action 3 and 5); (5) violation of the California Constitution's Due Process

Clause for deprivation of property (Cause of Action 4); as well as (6) mail and wire fraud and

conspiracy (Causes of Action 2 and 7); (7) extortion (Cause of Action 2); (8) conspiracy to

commit hijacking (Cause of Action 6); and (9) violation of the Administrative Procedures Act

(Cause of Action 8).[3]  Knight appears to seek both damages and a permanent injunction to prohibit

---

[2] "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[3] The Causes of Action are outlined in the complaint as:
- Cause of Action 1: "Substantive Due Process Claim against State Created Danger and Property Seizure" under 42 U.S.C. § 1983, the Fourth Amendment, the Fourteenth Amendment.  [Compl. at pdf p. 17]
- Cause of Action 2: "Violation of Right to be Secure from Unreasonable Seizures, Substantive Due Process State Created Danger, Wire Fraud, Conspiracy to Commit Wire Fraud, and Extortion" under § 1983, the Fourth Amendment, the Fourteenth Amendment, 18 U.S.C. § 1961 (Wire Fraud).  [Compl. at pdf 19-23]
- Cause of Action 3: "Violation of the Takings Clause" under § 1983, the Fifth Amendment. [Compl. pdf 23-28]
- Cause of Action 4: "Violation of Right to Due Process of Law" under California Constitution Article 1 § 7(a)(5).  [Compl. at pdf 28]
- Cause of Action 5 (also labeled "Second Cause of Action") – Fifth Amendment Takings and 42 U.S.C. §§ 1983, 1985.  [Compl. at pdf 28-30]
- Cause of Action 6: "conspiracy to commit hijacking" under no stated law.  [Compl. at pdf 30-31]
- Cause of Action 7: "Mail and Wire Fraud" under 18 U.S.C. § 1961.  [Compl. at 31-35]
- Cause of Action 8: Violation of Administrative Procedures Act (not against the present defendants).  [Compl. at pdf 35-39]
- Cause of Action 9: "Conspiracy to Deprive of Civil Rights" under 42 U.S.C. § 1985, *Monell*.  [Compl. at pdf 39-40]

United States District Court
Northern District of California

United States District Court
Northern District of California

the defendants from seizing his boat going forward.  *See* Complaint ("Compl.") [Dkt. No. 1] at pdf 40-41.  The claims are also filed against many other defendants who are not involved in the present motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders.  To obtain a preliminary injunction, the plaintiff has the burden to "establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "Where, as here, the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Id.* (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

"Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  Courts in this Circuit "appl[y] a 'sliding scale' approach to preliminary injunctions such that a preliminary injunction can issue 'where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor."'"  *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, n. 7 (9th Cir. 2001).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).   A motion for temporary restraining order must include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any

1    efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

2                                              **DISCUSSION**

3    **I.      Temporary Restraining Order**

4            For the reasons that follow, I conclude that—at this preliminary stage of litigation—Knight

5    has shown "serious questions going to the merits," *Doe*, 19 F.4th at 1177, of his substantive due

6    process claim under the Fourteenth Amendment, his unreasonable seizure claim under the Fourth

7    Amendment, and his Takings Clause claim under the Fifth Amendment.  At this point "the balance

8    of hardships tips sharply in Knight's favor," *id.*, and so a temporary restraining order is

9    appropriate.

10   **A.  Serious Questions Going to the Merits**

11            **i.      Fourteenth Amendment Substantive Due Process**

12           "Substantive due process 'forbids the government from depriving a person of life, liberty,

13   or property in such a way that "shocks the conscience" or "interferes with the rights implicit in the

14   concept of ordered liberty."'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting

15   *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998)); *see also Brittain v. Hansen*, 451

16   F.3d 982, 990-91 (9th Cir. 2006).  "Substantive due process is ordinarily reserved for those rights

17   that are 'fundamental.'" *Id.* at 990 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721-22

18   (1997)).

19           The complaint alleges that RBRA is acting outside the scope of its authority to seize

20   Knight's vessel.  While the RBRA says it may seize the vessel as marine debris under CHNC

21   sections 550 and 551,[4] Knight counters that the vessel does not meet the regulatory definition and

22   therefore cannot be seized.  Indeed, Knight says that the RBRA created a fraudulent report

23   _____

24   [4] CHNC section 550 defines "Marine debris" as "a vessel or part of a vessel, including a derelict,
     wreck, hulk, or part of any ship or watercraft or dilapidated vessel, that is unseaworthy and not
25   reasonably fit or capable of being made fit to be used as a means of transportation by water."  Cal.
     Harbor & Navigation Code § 550.
26   Section 551(a)(1) provides, "marine debris that is floating, sunk, partially sunk, or beached in or
     on a public waterway, public beach, or on state tidelands or submerged lands may be removed or
27   destroyed, or otherwise disposed of, by any state, county, city, or other public agency having
     jurisdiction over its location of having authority to remove marine debris or solid waste."  *Id.*
28   § 551(a)(1).  The object must "meet[] the definition of marine debris" from section 550(b) and
     "ha[ve] no value or a value that does not exceed the cost of removal and disposal."  *Id.*

United States District Court
Northern District of California

determining the boat constituted marine debris so that the agency could seize the boat, show the state and federal funding agents its enforcement action, and receive additional money from the state and federal governments.  At this point, it is not clear if this theory is plausible.  But if the RBRA is acting outside its delegated authority to seize a vessel that does *not* qualify as marine debris, it is plausible that Knight could show that conduct "shocks the conscience" or "interferes with the rights implicit in the concept of ordered liberty."  *Corales*, 567 F.3d at 568.

Currently, this issue seems to come down to a factual dispute about whether the boat meets the definition of marine debris.  There is not enough information before me, at this early stage, to assess the veracity of either side's argument.  It is possibly plausible that the boat is not marine debris, the agency is intentionally acting outside its authority to seize it, and Knight has a viable Fourteenth Amendment Claim.  Therefore, at this point, there are serious questions going to the merits of this claim.  *See Doe*, 19 F.4th at 1177.

### ii.    Fourth Amendment Seizure

In *Soldal v. Cook County, Illinois*, 506 U.S. 56, 67 (1992), the Supreme Court explained that the Fourth Amendment protects plaintiffs' property rights in civil cases.  As relevant here, the Court also held that seizing the plaintiff's mobile home and carrying it away to a new location constituted a "seizure" within the meaning and protections of the Fourth Amendment, even if no invasion of privacy had occurred.  *Id.* at 61-64; *see also id.* at 66 ("[A] seizure of [an] article . . . would obviously invade the owner's possessory interest." (quoting *Horton v. California*, 496 U.S. 128, 134 (1990)).  The Court explained that "the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all."  *Id.* at 69.

Knight asserts that he lives in his boat, though the RBRA contests that fact.  If his boat is his home, towing away the boat would constitute a seizure under the Fourth Amendment.  *See id.* at 61-64.  Whether that seizure is reasonable and therefore permissible under the Fourth Amendment is up for the debate.  The RBRA does not directly address the Fourth Amendment argument but seems to assert the seizure would be reasonable given its authority under CHNC

8

sections 550 and 551.

The parties contest whether CHNC sections 550 and 511 authorizes seizure of Knight's boat, given their conflicting views whether the boat constitutes marine debris.  But even if the regulation authorized seizure, the seizure is not necessarily reasonable within the meaning of the Fourth Amendment.  Where a possessory interest is protected by the Fourth Amendment, "[t]he mere fact that a state has authorized a search or seizure does not render it reasonable under the Fourth Amendment."  *Sandoval v. County of Sonoma*, 72 F. Supp. 3d 997, 1007 (N.D. Cal. 2014), *aff'd*, 912 F.3d 509 (9th Cir. 2018), *and aff'd*, 912 F.3d 509 (9th Cir. 2018) (first citing *Sibron v. New York*, 392 U.S. 40, 61 (1968); then citing *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005)); *cf. Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990) (rejecting a constitutional challenge to the city's authority to seizure automobiles as meritless where the court determined the ordinance "was authorized by state law and was within the police powers of the state").

The RBRA does not explain why the seizure would be reasonable under the CHNC and fails to otherwise address reasonableness in its opposition.  It also does not contest that it did not offer Knight a hearing on the seizure, *see* Compl. ¶ 83; Mot. ¶ 12, or provide Knight a copy of the survey that determined his boat was marine debris, Mot. ¶ 19.  At this point, then, there are serious questions going to the merits of the reasonableness of the seizure.  *See Doe*, 19 F.4th at 1177.

### iii. Fifth Amendment Takings Clause

"A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it."  *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019).  "The government commits a physical taking when . . . the government physically takes possession of property without acquiring title to it."  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (citing *United States v. Pewee Coal Co.*, 341 U.S. 114, 115-17 (1951) (plurality)).  This "sort[] of physical appropriation constitute[s] the 'clearest sort of taking,' and we assess [it] using a simple, *per se* rule:  The government must pay for what it takes."  *Id.* (first quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001), then citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Plan. Agency*, 535 U.S. 302, 322 (2002)).

United States District Court
Northern District of California

Additionally, "[i]ndividuals must receive notice and an opportunity to be heard before the Government deprives them of property." *Gremmels v. FDA*, No. 21-CV-06102-JSC, 2021 WL 7448539, at *2 (N.D. Cal. Oct. 5, 2021), *report and recommendation adopted*, No. 21-CV-06102-VC, 2021 WL 7448546 (N.D. Cal. Nov. 4, 2021) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).

The RBRA provided Knight the opportunity to exchange his boat for compensation through the buy-back program, which would seemingly obviate a Takings Clause claim. But Knight asserts that the compensation was conditioned on not becoming homeless after selling the boat, and that if he became homeless he would be forced to return the money. Mot. ¶ 30. The RBRA does not address this argument. It seems as though requiring Knight to forfeit the compensation if he becomes homeless—which is certainly a possible outcome of a forced eviction—could violate the requirement of the Takings Clause to provide just compensation for seizure of property, because it would condition the compensation on avoiding a perhaps unavoidable consequence of the government's own action. Because the RBRA does not address this potentially plausible argument, I find there are serious questions going to the merits of the Fifth Amendment claim.

### iv.   Remaining Claims

To state a substantive due process claim based on the state-created danger doctrine, Knight must establish: (1) "the officers' affirmative actions created or exposed h[im] to actual, particularized danger that []he would not otherwise have faced"; (2) "the injury was foreseeable"; and (3) "the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The third element, deliberate indifference, requires "proof that a municipal actor disregarded a known or obvious consequence of his action" which is "a stringent standard of fault." *Id.* at 1274 (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)). "[I]t requires a 'culpable mental state.'" *Id.* (quoting *Patel*, 648 F.3d at 974).

Even if Knight could meet the first two elements of the state-created danger claim, he does not show, at least based on this preliminary posture, that Malcolm or any other responsible official had a culpable mental state to expose Knight to the dangers of homelessness. *See id.* Malcolm's

sworn declaration asserts that he has conducted day and night patrols of Richardson Bay since October 2021 and has never seen anyone living on the boat.  Malcolm Decl. ¶ 8.  Whether Knight actually lives on the boat is a separate question; that Malcolm believed no one lived on the boat shows he did not have a culpable mental state intending to evict Knight from his home with nowhere to go, or to expose him to the additional dangers of being unhoused and living with disabilities.

Additionally, Knight does not currently provide sufficient supporting facts or law for his claims concerning mail and wire fraud, extortion, conspiracy to commit hijacking, or violations of the Administrative Procedures Act.  This, combined with the lack of counterargument or rebuttal from the defendants, means I cannot say at this preliminary stage whether there are serious questions on the merits of these claims.

**B.  Balance of Hardships**

A "plaintiff[] must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction."  *Cottrell*, 632 F.3d at 1131 (citing *Winter*, 555 U.S. at 20-21).  "The Ninth Circuit has held that 'an alleged constitutional infringement will often alone constitute irreparable harm.'"  *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021), *modified*, No. 20-CV-09425-SVK, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021) (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)).  The "public interest in preserving nature and avoiding irreparable environmental injury" is "well-established."  *Cottrell*, 632 F.3d at 1138 (citation omitted).

First, Knight alleges many constitutional rights that were infringed.  As explained above, as least three of these allegations have substance.  These alone may constitute irreparable harm.  *See Bernal*, 514 F. Supp. at 1145.

Additionally, Knight submitted a sworn declaration stating that he lives on his boat.  Mot. Ex. A. ("Knight Decl.").  He says he will be unable to find a new place to live because he has a fixed income and little credit history.  Mot. ¶ 4.  Knight asserts that he will suffer irreparable harm if he is evicted from his boat because if becomes homeless, he will not have access to hygiene facilities like showers, which are especially necessary given his physical ailments from a recent

United States District Court
Northern District of California

staph infection.  Knight Decl. ¶¶ 6-8.

The RBRA contests that Knight lives on his boat but does not assert he has another place to live or will be able to care for his physical ailments if he is evicted.  The RBRA cites several out-of-circuit cases about how seizure of property does not constitute irreparable harm.  *See* Oppo. 6:15-7:2 (citing *Lambert v. Bd. Of Commissioners of Orleans Levee Dist.*, No. 05-5931, 2006 WL 8456316, at *6-7 (E.D. La. Mar. 22, 2006); *Joseph v. United States*, No. 2017-0011, 2017 WL 761637, at *3 (D. Vir. Is. Feb. 27, 2017); *Tiffany v. Forbes Custom Boats, Inc.*, 959 F.2d 232 (4th Cir. 1992)).  But this case is unlike those because Knight's argument is that the irreparable harm stems from his use of his boat as housing, including his alleged unlikelihood of procuring new housing at an affordable rate given his fixed income and limited rental history.  Based on these allegations, Knight may suffer irreparable harm to his health and safety if the eviction goes through.

And importantly, the RBRA does not appear to assert any irreparable harm from delaying the seizure of Knight's boat.  While avoiding irreparable environmental injury is a harm that could tip the balance of equities in favor of the RBRA, *see Cottrell*, 632 F.3d at 1138, the RBRA does not actually assert that Knight's boat harms the environment.  Rather, it argues it has the statutory authority to remove the boat under environmental protection laws and it includes a copy of the Eelgrass Protection and Management Plan.  *See* Oppo. 7:11-21; Ex. G.  Because it is not clear *at this stage in litigation* that having Knight's boat on the water causes harm to RBRA or the public, I cannot say that the agency or the public will suffer irreparable harm by continuing the status quo, at least for a short period.  The defendants do not make a sufficient showing at this point to tip the balance of equities in their favor.

Therefore, based on the alleged constitutional violations and alleged harm to Knight's health that the seizure and eviction may cause, compared to the apparently non-urgent need to enforce environmental protection guidelines, I find on this record that the balance of equities strongly favors Knight.  Coupled with the serious questions going to the merits as outlined above, the motion for the temporary restraining order shall issue.

**CONCLUSION**

The motion for the temporary restraining order is GRANTED.[5]

As described above, the parties shall conduct expedited discovery and exchange initial disclosures of documents each side relies on to prove their claims and defenses, and a list of witnesses, by November 3, 2022. Knight shall file an expanded Motion for a Preliminary Injunction by November 23, 2022. The defendants shall file any opposition by December 12, 2022, and Knight may file any reply by December 19, 2022. The hearing will be held on January 4, 2023, at 2:00 p.m. via Zoom videoconference.

In the papers, the parties must address: whether the RBRA may exercise authority over vessels in Richardson Bay; whether the *Coronado* qualifies as marine debris; whether Knight lives on the boat; what form of compensation was offered and/or rejected and why; other questions raised by this order; and, any other pertinent information.

**IT IS SO ORDERED.**

Dated: October 27, 2022

William H. Orrick
United States District Judge

---

[5] Knight's motion for proceedings to occur via Zoom, Dkt. No. 5, is GRANTED.