David V. Roth (State Bar No. 194648)
  *dvr@manningllp.com*
Elise Dvorochkin (State Bar No. 326360)
  *egd@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 217-6990
Facsimile: (415) 217-6999

Attorneys for RICHARDSON BAY REGIONAL AGENCY; JIM MALCOLM; STEVEN MCGRATH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL KNIGHT,<br><br>           Plaintiff,<br><br>     v.<br><br>RICHARDSON BAY REGIONAL AGENCY, ET AL.,<br><br>           Defendant. | Case No. 3:22-cv-06347-WHO<br><br>**DEFENDANTS OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Date:     January 4, 2023<br>Time:    2:00 p.m.<br>Judge:   Hon. William H. Orrick<br>Courtroom: 2<br><br>Trial Date:    None |

### I.    INTRODUCTION AND FACTUAL BACKGROUND

This matter arises from the lawfully noticed removal of the 35 foot Coronado S/V ("the vessel"), a derelict vessel. As discussed in greater detail below, the vessel was lawfully posted with a 10-day notice to remove it from Richardson Bay pursuant to California Harbors and Navigation Code sections 550 and 551 which authorizes the removal and destruction of "marine debris." The vessel in questions meets this statutory definition of marine debris because it is unseaworthy and not reasonably fit or capable of being made fit to be used as a means of transportation by water. Specifically, the vessel has an extreme amount of debris on it, particularly in its cockpit. Decl. Malcom 1:27-28. Further, since Mr. Malcolm began working for the RBRA in January of 2021, he has seen the vessel in a different location only one, but has never seen it

1  physically move from one spot; thus, it is unclear whether it has a means of propulsion. Decl.
2  Malcolm 2:1-3. More specifically, since the vessel went adrift from the anchorage and grounded
3  on the Belvedere shore on October 24, 2021 and was subsequently replaced back into Richardson
4  Bay on October 30, 2021, Mr. Malcolm has never seen the vessel move. Decl. Malcolm 2:4-6.
5        Moreover, there have been at least two occasions during which time the vessel was
6  observed by Mr. Malcom taking on water and he contacted Plaintiff to alert him to this issue each
7  time. Decl. Malcolm 2:7-8. Plaintiff admitted to Mr. Malcolm that the vessel had various
8  mechanical issues which were causing the vessel to take on water. Decl. Malcolm 2:8-9.
9  Eventually, Plaintiff patched up the side of the vessel in order to prevent the vessel from sinking
10 further. Decl. Malcolm 2:10-11. Lastly, the vessel has been observed to be uninhabited since
11 October 2021. Decl. Malcolm 2:12. Mr. Malcolm has conducted both day-time and night-time
12 patrols of the Bay and has not seen Plaintiff on the vessel at any time. Decl. Malcolm 2:13-14. In
13 essence, the vessel is not seaworthy and is uninhabited; thus, it poses a danger to the protected
14 zone within Richardson Bay and other vessels in the area.
15       Plaintiff asserts various causes of action against RBRA, its harbormaster, Jim Malcom and
16 its director, Steven McGrath, related to the noticed removal of the subject vessel and he seeks a
17 preliminary injunction prohibiting the RBRA from taking the vessel out of Richardson Bay.
18 Plaintiff cannot, however, demonstrate irreparable harm, as the loss of the subject vessel is fully
19 compensable through monetary damages if Plaintiff is successful on his claims. Further, an
20 injunction would be contrary to public policy given RBRA's mandate to enforce laws related to
21 marine debris. In conclusion, the RBRA respectfully submits that no preliminary injunction should
22 be ordered.

### II.  ARGUMENT

24       A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on
25 the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
26 balance of equities tips in his favor and that an injunction is in the public interest." *Winter v.*
27 *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). Moreover, a preliminary
28 injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief." *Id.* at 22.

**A. <u>Plaintiff Cannot Demonstrate that He is Likely to Succeed on the Merits</u>**

California law gives the RBRA authority to remove and destroy marine debris in Richardson Bay. "Marine debris" is defined as "a vessel or part of a vessel, including a derelict, wreck, hulk, or part of any ship or other watercraft or dilapidated vessel, that is unseaworthy and not reasonably fit or capable of being made fit to be used as a means of transportation by water." Cal. Harb. & Nav. Code § 550(b). California Harbors and Navigation Code section 551, subdivision (a)(1), provides in relevant part:

> Notwithstanding any other law, marine debris that is floating, sunk, partially sunk, or beached in or on a public waterway…may be removed and destroyed, or otherwise disposed of, by any state, county, city, or other public agency having jurisdiction over its location or having authority to remove marine debris or solid waste, subject to the following conditions:
>
> (A) The object meets the definition of marine debris in subdivision (b) of Section 550 and has no value or a value that does not exceed the cost of removal and disposal.
>
> (B) If there is no discernible registration, hull identification number, or other identification insignia, a peace office or authorized public employee securely attaches to the marine debris a notice stating that the marine debris shall be removed by the public agency if not claimed or removed within 10 days.
>
> (C) If there is discernible registration, hull identification number, or other identification insignia, a notice is attached to the marine debris as described in subparagraph (B), and sent to the owner of the marine debris, if known, at the owner's address of record with the Department of Motor Vehicles, by certified or first-class mail.
>
> (D) The marine debris remains in place for 10 days from the date of attaching the notice to the marine debris or from the date the notice letter was sent, whichever is later, before being removed.

Moreover, Section 551, subdivision (b) provides that "[n]ot withstanding subdivision (a), marine debris that constitutes a public nuisance or a danger to navigation, health, safety, or the environment may be removed and disposed of immediately, unless the marine debris is whole or not demolished during removal, in which case it shall be maintained or stored for 10 days to permit notification of the owner. If the owner of the marine debris is not identifiable, the marine debris may be immediately destroyed or otherwise disposed of."

It is well established that the state has inherent power to subject individual rights to reasonable regulation for the general welfare. *See* 8 Witkin, Summary 11th Const Law § 1098 (2022); *see also Queenside Hills Reality Co. v. Saxl,* 328 U.S. 80, 82-83 (1946); *Massingill v. Department of Food & Agriculture,* 102 Cal.App.4th 498, 504 (2002). Police power "extends to objectives in furtherance of the public peace, safety, morals, health and welfare." *Birkenfeld v. City of Berkeley,* 17 Cal.3d 129, 160 (1976). Indeed, the Ninth Circuit (among other circuits) has held that municipal governments have inherent police power to seize inoperative vehicles that constitute a nuisance. *Conner v. City of Santa Ana,* 897 F.2d 1487, 1493 (9th Cor. 1990); *see also City of Costa Mesa v. Soffer,* 11 Cal.App.4th 378, 383 (1992).

Here, there can be no dispute that the RBRA had authority to utilize and enforce Section 550 and 551. Thus, to prevail in the underlying action, Plaintiff has the burden to prove that the subject vessel was not marine debris or that the RBRA did not adhere to the procedures set forth in Sections 550 and 551. Further, to obtain a preliminary injunction, Plaintiff has the burden to demonstrate that he "is likely to succeed on the merits." Based on the evidence presented, Plaintiff cannot meet this burden because the subject vessel meets the statutory definition of marine debris.

As set forth in the attached declaration from Harbormaster James Malcolm, the vessel is "marine debris" as described in Harbors and Navigation Code section 550, subdivision (b), because it is 'unseaworthy and not reasonably fit or capable of being made fit to be used as a means of transportation by water." Specifically, the vessel has collected a substantial amount of debris and it has not moved from one spot in the Bay; thus its means of propulsion is unclear and, frankly, suspect. Decl. Malcolm 1:27-28 – 2:1-6.

Moreover, the various arguments asserted by Plaintiff do not demonstrate a likelihood that he will prevail on the merits. The evidence presented by Plaintiff shows that he was served with a 10-day notice, as required by Section 551, subdivision(a)(1)(B). *See* Exhibit A to Malcolm's Declaration. This notice was posted on October 14, 2022, thereby establishing that the RBRA had the authority to remove the subject vessel from the Bay on October 24, 2022.

/ / /

Further, and contrary to Plaintiff's allegations, he was offered three reasonable options regarding the vessel. The first was for the RBRA to take the vessel out of the Bay and dispose of it; the second was for Plaintiff to simply take his vessel and anchor it outside of Richardson Bay; and the third option was for Plaintiff to participate in the RBRA's buy-back program. Decl. Malcolm 2:17-20.

### B. Plaintiff Has Not Demonstrated Irreparable Harm

Irreparable harm is defined as harm for which there is no adequate legal remedy, such as an award of damages. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991). Generally, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90 (1974) internal citation and quotations omitted). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* The word "'irreparable "means that which cannot be repaired, retrieved, put down again, atoned for[.]'" *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir. 1976) (quoting *Gause v. Perkins,* 3 Jones Eq. 177, 69 Am. Dec. 728 (1857)).

"[A]lthough some injuries may usually be irreparable and this a likelihood of irreparable injury easily shown, the plaintiff must still make that showing on the facts of his case and cannot rely on a presumption to do it for him" *Flexible Lifeline Sys., Inc. v. Precision Life, Inc.,* 654 F.3d 989, 998 (9th Cir. 2011) (citing *Winter* and *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006)). The harm, to qualify as "irreparable," must be "neither remote nor speculative but actual and imminent," *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989), and must represent an immediate threat of irreparable harm, *Dan River. Inc. v. Icahn,* 701 F.2d 278, 283 (4th Cir. 1983).

Here, Plaintiff appears to claim that he will suffer irreparable harm absent an order prohibiting the disposal of his vessel for two reasons: (1) the vessel serves as Plaintiff's residence; and (2) he will suffer serious bodily injury and death. However, Plaintiff has not shown irreparable harm under either theory.

As previously stated, Plaintiff was given the option to either remove the vessel on his own or to participate in the RBRA's buy-back program, whereby the RBRA will compensate owners of vessels in exchange for removing and disposing of their vessels. Decl. Malcolm 2:17-22. In fact, Plaintiff did choose to participate and even told Mr. Malcolm on September 30, 2022 that he would like to surrender the vessel. Decl. Malcolm 2:23-24. *See* Exhibit B to Malcolm's Declaration. A meeting between Plaintiff and Mr. Malcolm was set for October 3, 2022; however, due to Mr. Malcolm testing positive for COVID-19, this meeting was cancelled. Decl. Malcolm 2:26-27; *See* Exhibit C to Malcolm's Declaration. After Mr. Malcolm recovered, he contacted Plaintiff to reschedule the meeting and resume their discussions about the buy-back program but in response, he was served with a cease and desist email on October 10, 2022. Decl. Malcolm 3:1-3; *See* Exhibit D to Malcolm's Declaration. Mr. Malcolm then posted the 10-day marine debris notice, onto the vessel. Decl. Malcolm 3:5. Mr. Malcolm also emailed and sent Plaintiff via certified mail copies of the 10-day notice, the marine survey report and the response to the cease and desist letter. Decl. Malcolm 3:6-7.

Plaintiff's past use of the vessel as a residence does not mean that money damages would be inadequate to compensate for its loss. Moreover, even though Plaintiff identifies the vessel as his home, courts have repeatedly rejected attempts to characterize the loss of boats as irreparable because of their uniqueness. *See Lambert v. Bd. of Commissioners of Orleans Levee Dist.,* Case No. 05-5931, 2006 WL 8456316, at *6-7 (E.D. La. Mar. 22, 2006) ("Plaintiffs cite to a case stating that the threatened loss of a piece of real property is always an irreparable injury…Plaintiffs then assert that, like real property, boats are unique so that a vessel's threatened loss therefore also necessarily entails irreparably harm. But plaintiffs provide no authority for this logical leap, and it is far from facially apparent that the loss of a vessel could not be remedied by an award of monetary damages."); *Joseph v. U.S.,* Case No. 2017-0011, 2017 WL 761637, at *3 (D. Vir. Is. Feb. 27, 2017) ("Other than this conclusory statement about the irreparable harm he would suffer in being deprived of the use of his boat, Joseph makes no argument why the harm is 'of a peculiar nature, so that compensation in money cannot atone for it.' …[S]hould Joseph win on the merits of his action, he can be adequately compensated by monetary damages…"); *Tiffany v. Forbes*

1 *Custom Boats, Inc.,* 959 F.2d 232 (4th Cir. 1992) ("The claim of the plaintiff of use of the boat and opportunity to entertain on the vessel will not constitute the required 'irreparable harm.'").

### C. A Preliminary Injunction is Against Public Policy

As noted above, a preliminary injunction is "an extraordinary remedy never awarded as a right." *Winter,* 555 U.S. 7 at 24. In each case, the court "must balance the competing claims of injury and must consider the effect on each part of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 542 (1987). Moreover, in exercising discretion, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

In this case, there are numerus policy reasons weighing against a preliminary injunction prohibiting the RBRA from taking Plaintiff's vessel out of the Bay. The most simple and straightforward reason is the state mandate facing the RBRA to remove derelict vessels from Richardson Bay in furtherance of environmental preservation and safety. In fact, the RBRA entered into an agreement with the San Francisco Bay Area Conservation and Development Commission ("BCDC") in order to establish a timeline for the RBRA to remove illegal anchor-outs in Richardson Bay. *See* BCDC Agreement, attached as Exhibit E to Malcolm Declaration. This agreement requires the RBRA to remove illegally anchored vessels and marine debris – such as the subject vessel – from Richardson Bay and enforce the provisions of the Eelgrass Protection Plan. *See* Eelgrass Protection and Management Plan, attached as Exhibit F to Malcolm Declaration.

///
///
///
///
///
///
///

### III.   CONCLUSION

In conclusion, Plaintiff's request for a preliminary injunction preventing the RBRA from taking his vessel out of the Bay should be denied.

DATED:  December 6, 2022

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _/s/ David V. Roth_
David V. Roth
Attorneys for RICHARDSON BAY REGIONAL AGENCY; JIM MALCOLM; STEVEN MCGRATH